## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABDULLAH IBN JIHAD FRIEND, | : | Civil No. 3:18-CV-1715 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BRAD SHOEMAKER, WARDEN, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

This is a civil rights action filed by Plaintiff Abdullah Ibn Jihad Friend ("Friend"). Friend asserts that his constitutional rights were violated by Defendants while he was a detainee at Lycoming County Prison ("LCP"), primarily due to alleged interference with religious observance and retaliation by prison staff because he is Muslim. Presently before the court is Defendants' motion to dismiss the second amended complaint. (Doc. 31.) Friend has not filed a brief in opposition to Defendants' motion. For the following reasons, Defendants' motions to dismiss the second amended complaint will be granted. The court will grant Friend an additional opportunity to file an amended complaint.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On August 29, 2018, Friend, a pretrial detainee housed at the LCP in Williamsport, Pennsylvania, filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1.) This matter proceeds on Friend's second amended

complaint.  (Doc. 30.)  Named as defendants are the following LCP employees:
Warden Brad Shoemaker; Deputy Warden Ryan Barnes; Correctional Officer
("CO") Daniel Worthington; Lt. Harry Entz and Travis Heap.  Plaintiff also names
the following members of the Lycoming County Prison Board as defendants:   R.
Jack McKernan; Tony Mussare; and Richard Mirabito.  (*Id.*)

In May 2018, Friend's LCP housing unit had "quiet time" nightly between
11 p.m. and 7 a.m.  During those hours, inmates are prohibited from making
"excessive noise."  Friend is a practicing Muslim.  (*Id.*, ¶¶ 1, 7, 12.)  Every
morning he recites the Adhan, which calls others to prayer, and the Salaah, a
morning prayer.  (Doc. 32–1.)

According to the allegations in the second amended complaint, on the
morning of May 15, 2018, CO Worthington interrupted Friend's Adhan which he
was audibly reciting from his cell.  (Doc. 30, ¶¶ 2–3.)  CO Worthington told Friend
to "shut the fuck up" and threatened him with disciplinary action.  CO
Worthington then left and returned with the on-duty supervisor, who told Friend to
continue reciting the Adhan before reciting his morning prayer.   (*Id.*, ¶ 3.)

On May 17, 2018, CO Worthington "stalked" the hallways waiting for
Friend to begin reciting the Adhan.  (*Id.,* ¶ 4.)  Once Friend began his Adhan, CO
Worthington told him to "shut the fuck up and threaten[ed] to send plaintiff to
segregation."  (*Id.,* ¶ 5.)  CO Worthington issued Friend an incident report for

disruption of the prison routine, refusing to obey an order, and excessive noise. (*Id.*, ¶ 6; Doc. 32-1.)  Friend claims CO Worthington violated his First Amendment rights by silencing his call to worship.  Friend claims the prison's "quiet time" policy restricts his ability to practice his religion.  (Doc. 30, ¶ 7.)

Next, Friend claims Defendants Barnes, Entz and Heap violated his Fourteenth Amendment due process rights during his disciplinary hearing when they prevented him from calling inmate witnesses who would testify that his morning prayers were neither excessively loud nor disruptive to their routines. (*Id.*, ¶ 16.)  Friend claims he was not "yelling" the Adhan as CO Worthington claims.  He stated he does the same thing every morning and only CO Worthington "give[s] [him] a problem."  (Doc. 32-1.)  Defendants Barnes, Entz, and Heap, told Friend he could not make "any noise" during third shift from 11 p.m. to 7 a.m., and that his recitation of the Adhan and Salaah (morning prayer) violated the prison's "quiet time" policy.  (Doc. 30, ¶ 7.)  Citing "safety and security" concerns, Defendants told Friend that his audible recitation of the Adhan and Salaah during "quiet time" had the potential of offending other inmates.  (*Id.*, ¶ 8.)  Based on CO Worthington's incident report and Friend's statements, they found him guilty of making excessive noise during quiet hours and imposed a sanction of ten days' disciplinary custody.  (*Id.*, ¶ 11; Doc. 32-1.)

3

Friend filed a grievance concerning the issue.  Warden Shoemaker denied the grievance even though Friend submitted the signatures of other inmates affirming "that plaintiff was not excessive in noise or disrupting any inmates['] prison routine."  (Doc. 30, ¶ 9.)  The Prison Board, consisting of Defendants McKernan, Mussore, and Mirabito, denied Friend's appeal.  (*Id.*, ¶ 10.)  Friend claims "[t]here is no penological justification as to why the defendants restricted [him] from observing the morning acts of worship" during quiet hours.  (*Id.*, ¶ 13.)  Friend claims all Defendants failed to correct the offending policy which "impinges on his right to freely practice mandatory aspects of the Islamic Religion."  (*Id.*, ¶¶ 18–19.)

Finally, Friend avers that his conditions of confinement in disciplinary segregation violated his Eighth Amendment rights as they were "atypical[ly] inhumane."  (*Id.*, ¶ 13.)  His claims his cell was dirty, the unit was bug infested, and meals were delivered 14 hours apart.  While in disciplinary custody he lacked contact with his family and suffered from sleep deprivation due, in part, to "being exposed to loud noise day and night from mentally ill inmates."  (*Id.*, ¶ 14.)  Friend seeks monetary compensatory and punitive damages.

Friend commenced this action on August 29, 2018, by filing a complaint. (Doc. 1.)  After service of the complaint, but before a response was filed, Friend filed an amended complaint adding Heap and Entz as defendants.  (Doc. 18.)  On

November 16, 2018, Defendants filed a motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (Doc. 24.)  By way of a response, Friend sought leave to file a second amended complaint.  (Doc. 27.)  The court granted Friend's request.  (Doc. 29.)  Friend's second amended complaint was docketed on April 11, 2019.  (Doc. 30.)

On May 13, 2019, Defendants filed a motion to dismiss the second amended complaint.  (Doc. 31.)  A supporting brief was timely filed on May 29, 2019. (Doc. 32.)  The time for Friend to file an opposition brief, or seek an enlargement of time to do so, has passed without him communicating with the court.  As such, the motion is ripe for disposition.[1]

---

[1]  Although a plaintiff is entitled to notice and an opportunity to respond to a motion to dismiss, he has no obligation to respond.  He may opt to stand on the pleadings rather than file an opposition.  The court must nevertheless examine the complaint and determine whether it states a claim as a matter of law.  *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F2d 168, 174 (3d Cir. 1990).

Additionally, when considering a motion to dismiss, the court generally limits its review to the complaint, attached exhibits, and matters of public record.  *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007).  However, the court may also consider documents supplied by defendants in support of their motion to dismiss "if they are 'undisputedly authentic' and 'the [plaintiff's] claims are based [on them]'".  *Estate v. Roman v. City of Newark*, 914 F.3d 789, 796 (3d Cir. 2019) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  "[D]ocuments whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).  Although not attached to Friend's second amended complaint, Defendants submit a copy of CO Worthington's Incident Report which also contains the results of Friend's disciplinary hearing.  (Doc. 32–1.)  The court will consider this document in resolving Defendant's motion to dismiss as neither party disputes the authenticity of this document or that Friend's claims against CO Worthington, Barnes, Entz

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines

---

and Heap are based on it.  The court, drawing all inferences in the light most favorable to Friend, will consider the Incident Report to the extent it provides support and context to Friend's factual assertions in his second amended complaint.

whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## DISCUSSION

Friend alleges that he has been deprived of certain constitutional rights in violation of 42 U.S.C. § 1983.  Section 1983 provides that persons acting under color of state law may be held liable if they deprive an individual of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  *See* 42 U.S.C. § 1983.  To state a § 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1998); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

In their motion to dismiss to dismiss the second amended complaint, Defendants argue that Friend (1) fails to sufficiently allege his First Amendment Free Exercise right was violated by CO Worthington or any other Defendant, and alternatively, any interference with Friend's ability to practice his religion was pursuant to a legitimate penological interest, (2) fails to identify a prison policy or custom that violated his constitutional rights, (3) fails to state a claim against Defendants Shoemaker, Barnes, McKernan, Mussare, Mirabito, Entz and Heap, (4)

fails to state a Fourteenth Amendment procedural due process claim, (5) fails to state a due process claim based on his ten day stay in solitary confinement, and (6) fails to state a claim for punitive damages.  (Doc. 32.)  Having reviewed Defendants' motion, the court concludes that Friend fails to state a viable claim against any of the named Defendants in the second amended complaint.

### A. Friend's First Amendment Free Exercise of Religion Claim

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from any conditions of confinement amounting to "punishment."  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment."  *Id.* at 539.  In evaluating whether a challenged condition of confinement amounts to punishment of a pretrial detainee, the court must consider "whether any legitimate purposes are served by [the] conditions, and second, whether [the] conditions are rationally related to these purposes."  *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008) (quoting *Union Cnty Jail Inmates v. DiBuono*, 713 F.2d 984, 992 (3d Cir. 1983)).

The First Amendment, which is applicable to the States through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof…."  U.S. Const. amend. 1.  Under the First Amendment, beliefs which are both sincerely held and

8

religious in nature are entitled to constitutional protection, but "the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates."  *DeHart v. Horn*, 227 F.3d 47, 50–51 (3d Cir. 2000).

To establish a First Amendment Free Exercise violation, the plaintiff must plead facts that plausibly show or allow the inference that the defendants' action at issue or a prison regulation placed a substantial burden on a plaintiff's exercise of his religion.  *Washington v. Klem*, 497 F.3d 272, 278 (3d Cir. 2007).  If this burden is met, courts apply the four factors set forth in *Turner v. Safley* to determine whether a prison regulation that infringes upon an inmate's constitutional right is reasonably related to legitimate penological interests.  482 U.S. 78 (1987).  The *Turner* factors are:  (1) "there must be a valid, rational connection between the prison regulation and the legitimate governmental interest"; (2) whether the inmate has an "alternative means of exercising the right" at issue; (3) the burden that the accommodation would impose on prison resources; and (4) "the absence of ready alternatives." *Turner*, 482 U.S. at 89-91.  Moreover, "[w]hen accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials."  *Id*., 482 U.S. at 90; *see also Overton v. Bazzetta*, 539 U.S.

126, 132 (2003) (substantial deference must be given to prison administrators'

judgment.)  A prison policy that substantially burdens an inmate's ability to

practice his religion withstands a First Amendment challenge when it is

"reasonably related to legitimate penological interests." *O'Lone v. Estate of

Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner*, 482 U.S. at 89).

Applying the above principles and standards to the facts of the second

amended complaint, Friend does not allege that CO Worthington, or any other

Defendant, substantially burdened his right to worship; rather, Friend was denied

the right to worship in a manner individually tailored to meet his own desires, i.e.

reciting the Adhan, the calling of others to prayer, at 4:30 a.m. at a volume that

exceeded the institution's quiet time rules.  The prison's "quiet time" rule does not

place a blanket prohibition on Friend from reciting the Adhan, or other morning

prayers.  Rather, he is permitted to recite the Adhan and Salaah in a manner that

does not conflict with the institution's quiet hours between 11 p.m. and 7 a.m.

Friend does not allege in the second amended complaint that requiring him to

recite the Adhan silently to himself, or at a lower, less disruptive level during quiet

hours substantially burdens his free exercise of religion.  As such, Friend has not

demonstrated that CO Worthington, or the quiet hours policy, substantially burdens

the free exercise of his religion.

In sum, Friend's second amended complaint fails to plead sufficient facts to plausibly suggest the "quiet time" policy places a substantial burden on his free exercise of religion.  Accordingly, Defendants' motion to dismiss as to Friend's First Amendment claim will be granted.

### B. Friend's Procedural Due Process Claim Concerning his Disciplinary Hearing

The United States Court of Appeals for the Third Circuit has held that, "[g]enerally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003–06 (7th Cir. 1999)).  With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974)." *Kanu*, 739 F. App'x at 116.  These protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66); *see also Stevenson v. Carroll*, 495 F.3d 62, 70–71 (3d Cir. 2007).  The opportunity to call witnesses and/or present documentary evidence is not absolute.  *Wolff*, 418 U.S. 563–66.  "Prison

officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Id*., 418 U.S. at 566.

In this case, Defendants Barnes, Entz, and Heap found Friend guilty of making excessive noise during quiet hours based on CO Worthington's incident report and Friend's statement at the disciplinary hearing.  (Doc. 32-1.)  As to the denial of witnesses, Friend has not clearly identified the witnesses who would have testified or alleged that the testimony was denied in contravention of the prison officials' discretion or violated the institution's policy regarding the presentation of witnesses.

In his grievance appeal of the disciplinary matter, Friend submitted signatures from 16 other inmates "that plaintiff was not excessive in noise or disrupting any inmates prison routine."  (Doc. 30, ¶¶ 9, 10.)  If this is the information he sought to introduce at his disciplinary hearing, it appears to be redundant to his own testimony that "his volume was not excessive nor disrupting inmates prison routine[s]."  (*Id*., ¶ 16.)  However, because Friend did not respond to Defendants' motion to dismiss, the court can only speculate about Friend's argument as to why the witness deprivation deprived him of due process.  Thus, Friend has failed to allege facts sufficient to state a due process claim concerning

12

the alleged deprivation of witnesses at his disciplinary hearing, and Defendants'

motion to dismiss this claim will be granted.

### C. Friend's Conditions of Confinement Claim Related to his Ten Day Stay in Disciplinary Segregation

Individual liability can be imposed under Section 1983 only if the state actor

played an "affirmative part" in the alleged misconduct, and "cannot be predicated

solely on the operation of respondeat superior." *Evancho v. Fishser*, 423 F.3d 347,

353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.

1998)).  "A defendant in a civil rights action must have personal involvement in

the alleged wrongs….  Personal involvement can be shown through allegations of

personal direction or of actual knowledge and acquiescence."  *Rode*, 845 F.2d at

1207–08.  Such allegations, however, must be made with appropriate particularity

in that the complaint must allege the particulars of conduct, time, place, and

personal responsibility.  *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207–08.

Alleging a mere hypothesis that an individual defendant had personal knowledge

or involvement in depriving the plaintiff of his right is insufficient to establish

personal involvement.  *Rode*, 845 F.2d at 1208.

Friend alleges that the conditions of his confinement in the disciplinary

segregation unit violated his Eighth Amendment right to be free from "cruel and

unusual punishment."  (Doc. 30, ¶ 14.)  A pretrial detainee's § 1983 claim of

unconstitutional conditions of confinement is analyzed under the Due Process

13

Clauses of the Fifth and Fourteenth Amendments, while a convicted prisoner's claim for unconstitutional conditions of confinement is analyzed under the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Hope v. Warden York Cnty Prison,* No. 20-1784, 2020 WL 5001785, at *8 (3d Cir. Aug. 25, 2020). As Friend is a pretrial detainee, it is the Fifth and Fourteenth Amendments, not the Eighth Amendment, that apply to his conditions of confinement claims. *E.D. v. Sharkey*, 928 F.3d 299, 307 (3d Cir. 2019) (citing *Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008)). However, the Third Circuit Court of Appeals has held that under the Due Process Clause, pretrial detainees are entitled to "at least as much protection as convicted prisoners" under the Eighth Amendment's deliberate indifference standard and "decisions interpreting the Eighth Amendment serve as 'useful analogies.'" *Boring v. Kozakiewicz*, 833 F.2d 468, 471–72 (3d Cir. 1987).

Here, Friend claims that he was placed in a filthy, bug-infested cell where he was unable to sleep due to the noise of other inmates for ten days. However, absent from his second amended complaint are any averments that any of the Defendants were personally aware of the alleged conditions. Friend makes no assertion that any of the Defendants worked in the segregation unit during his ten day stay or knew the conditions of disciplinary segregation to be as he describes. Friend fails to assert that any of the Defendants knew his conditions of confinement posed a substantial risk to his health and recklessly failed to act with

14

reasonable care to mitigate the alleged risk.  Absent such allegations, Friend fails to state a condition of confinement claim against the named Defendants for the ten days he was housed in the disciplinary segregation unit, and Defendants' motion to dismiss this claim is granted.

> **D.   Friend's Failure to State a Claim against Defendants Shoemaker, McKernan, Mussare and Mirabito for their handling of his Grievance**

As noted in the preceding section, in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode*, 845 F.2d at 1207. Friend alleges Defendant Shoemaker denied his grievance challenging his disciplinary action.  (*Id*., ¶ 10.)  The members of the Prison Board (McKernan, Mussare and Mirabito) affirmed the denial of his grievance.  (*Id*., ¶ 11.)  To the extent that Friend asserts that these Defendants violated his due process rights based on their denial of his grievance or grievance appeal—as opposed to the alleged denial of due process during his disciplinary hearing—any such claim fails because "[a] defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007).

It has long been recognized that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prisoner's complaint or grievance, is insufficient to establish personal involvement in the underlying unconstitutional conduct. *See Rode*, 845 F.2d at 1207-1208 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); *Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right"); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that allegations that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct). In accordance with the foregoing, any attempt by Friend to establish liability against Shoemaker, McKernan, Mussare or Mirabito based on their handling of his grievance rather than the disciplinary hearing does not support a constitutional claim and is subject to dismissal.

16

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is granted.

Generally, "plaintiffs who file complaints subject to dismissal under Rule 12(b)(6)

should receive leave to amend unless amendment would be futile." *Grayson v.

Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).  Because the court cannot

conclude that a third opportunity at amendment would be futile, the court will

grant Friend the opportunity to amend his complaint limited to curing the pleading

defects identified in this memorandum.

An appropriate order follows.

s/ Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated:  October 6, 2020