## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABDULLAH IBN JIHAD FRIEND, | : | Civil No. 3:18-CV-1715 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BRAD SHOEMAKER, WARDEN, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **<u>MEMORANDUM</u>**

Self-represented Plaintiff Abdullah Ibn Jihad Friend ("Plaintiff" or "Friend")

commenced this action pursuant to 42 U.S.C. § 1983 alleging Defendants

interfered with his ability to practice his religion and violated his due process rights

at a disciplinary hearing.  The action proceeds on Friend's third amended

complaint.  (Doc. 35.)  Named as Defendants are Daniel Worthington, Ryan C.

Barnes, Harry Entz, and Travis Heap.  Before the court is the Defendants' motion

to dismiss.  (Doc. 36.)  For the reasons set forth below, Defendants' motion will be

granted in part and denied in part.  Daniel Worthington will be dismissed as a

Defendant in this action as Friend fails to state a claim against him.  The claims

against Defendants Barnes, Entz, and Heap will not be dismissed and they will be

directed to file an answer to the third amended complaint.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Procedural History

On August 29, 2018, Abdullah Ibn Jihad Friend ("Plaintiff" or "Friend"), a pretrial detainee housed at the Lycoming County Prison ("LCP") in Williamsport, Pennsylvania, filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1.) Prior to Defendants filing a response, Friend filed an amended complaint. (Doc. 18.) Shortly thereafter, Defendants filed a motion to dismiss. (Doc. 24.) Friend then sought leave to file a second amended complaint. In the proposed amendment, Friend named the following LCP employees as Defendants: Warden Brad Shoemaker, Deputy Warden Ryan Barnes; Correctional Officer ("CO") Daniel Worthington; Lt. Harry Entz, and Travis Heap. Plaintiff also named the following members of the Lycoming County Prison Board as Defendants: R. Jack McKernan, Tony Mussare, and Richard Mirabito.[1] (Doc. 30.) On April 11, 2019, the court granted Friend's request, accepted the proposed amended complaint, and dismissed Defendants' motion to dismiss without prejudice. (Doc. 29.) On May 13, 2019, Defendants filed a motion to dismiss the second amended complaint. (Doc. 31.) On October 6, 2020, the court granted

---

[1] Due to Friend's failure to name Warden Shoemaker, McKernan, Mussare, or Mirabito as Defendants in the third amended complaint, they were terminated as parties. (Doc. 35.)

Defendants' motion to dismiss, but granted Friend leave to file a third amended complaint.  (Doc. 33.)

On October 26, 2020, Friend filed a third amended complaint naming CO Worthington, Ryan Barnes, Lt. Entz, and Travis Heap as Defendants.  (Doc. 35.) Defendants filed a motion to dismiss the third amended complaint on November 16, 2020.  (Doc. 36.)  Friend filed an opposition brief on December 30, 2020. (Doc. 38.)  On January 27, 2021, Defendants filed a reply brief.  (Doc. 41.) Defendants' motion is now ripe for disposition.

**B. Factual Background**

According to the allegations in the third amended complaint, the housing units at the LCP "are very small" and "any sound can be heard from everyone during 'quiet time' hours due to the small size of the block."  (Doc. 35, p. 2.)[2]  On May 17, 2018, at 4:30 a.m. the morning, CO Worthington heard the Muslim call for prayer, or Adhan, "being yelled from J Block."  (Doc. 37-1.)[3]  Upon investigating, CO Worthington discovered Friend was the source of the call.  (*Id.*) CO Worthington "interrupted and stopped [Friend] from reciting Adhan."  (Doc.

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

[3] Defendants supply a copy of the misconduct CO Worthington issued Friend following the incident.  *See* Doc. 37-1.  Friend does not dispute the authenticity of the misconduct. Accordingly, the court may consider the misconduct report when resolving the Defendants' motion to dismiss as Friend's claims are based, in part, on the document.  *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

35, ¶ 2; Doc. 37-1.)  CO Worthington issued Friend a disciplinary report charging him with disruption of the prison routine, refusing to obey an order, and excessive noise.  (Doc. 35, ¶ 2, Doc. 37-1.)  Prior to this incident, CO Worthington had received "3 complaints from other inmates … about these infractions happening on a daily basis.  Inmate Friend was warned for the same infractions on 05-15-2018." (Doc. 37-1.)  CO Worthington issued the misconduct after Friend "was warned three times in a matter of a minute to stop and each time was ignored."  (*Id*.)

At Friend's May 30, 2018 disciplinary hearing before Barnes, Entz, and Heap, he tried to explain that he was not making excessive noise but performing the Adhan and Salaah "audibly."  (Doc. 35, ¶ 4.)  Friend requested "to call down witnesses to establish the fact that he was not excessive in noise or disrupting prison routine (the witnesses later signed a grievance – supporting these facts)." (*Id*., ¶ 9.)  He also asserted that CO Worthington has a history of harassing Muslim inmates and interfering with their religious practices.  (*Id*., ¶ 4; Doc. 37-1.)  The disciplinary hearing committee denied Friend's request for witnesses and directed that "he must silently say the Adhan and Salaah."  (Doc. 35, ¶ 5.)  Friend was found guilty of the misconduct based on the incident report and his statement.  (*Id*., ¶ 6, Doc. 37-1.)  He received "10 days – suspended" segregated housing sentence. (*Id.*)

Friend claims CO Worthington placed a "substantial burden" on his religious practices on May 17, 2018, when preventing him from reciting the Adhan "in a non excessive and low tone that was not disruptive of the prison's routine." (Doc. 35, ¶ 9.)  His free exercise of religion claim against Barnes, Entz, and Heap stems from their directive that "he could not recite the Adhan or recite during his Salaah."  (*Id.*, ¶ 10.)  Friend alleges their actions "force Plaintiff to silently say to himself the Adhan and Salaah [which] violates [his] First Amendment rights to the free exercise of his religion."  (*Id.*)  Plaintiff also accuses Barnes, Entz, and Heap of violating his due process rights when they denied his request to call witnesses at his disciplinary hearing.  He claims the witnesses would have proven his recitation of the Adhan was neither excessive in noise nor disruptive to the prison's routine. (*Id.*, ¶ 11.)  As relief, Friend seeks declaratory and injunctive relief as well as compensatory and punitive damages for the violation of his First Amendment rights.  He also seeks monetary damages from each defendant for the mental and emotional distress he continues to suffer because of their actions.

## JURISDICTION

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.  Venue is proper in this district because the alleged acts and omissions giving rise to the

claims occurred at Lycoming County Prison in located in Lycoming County, Pennsylvania, which is in this district.  *See* 28 U.S.C. § 118(b); 28 U.S.C. § 1391.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193

(3d Cir. 2015), *as amended* (Mar. 24, 2015). Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014). A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

### DISCUSSION

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Because § 1983 is a method for

7

vindicating federal rights, not a source of substantive rights itself, the first step in an action filed pursuant to § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).  "After pinpointing that right, courts must still determine the elements of, and rules associated with, an action seeking damages for its violation."  *Manuel v. Joliet*, 137 S.Ct. 911, 920 (2017) (citing *Carey v. Piphus*, 435 U.S. 247, 257–258 (1978)).

## A.  Friend's Free Exercise of Religion Claims[4]

### 1.  First Amendment Free Exercise Claim

The First Amendment, which is applicable to the States through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof…."  U.S. Const. amend. I.  The Free Exercise Clause of the First Amendment prohibits prison officials from denying an inmate "a reasonable opportunity of pursuing his faith." *See Cruz v. Beto,* 405 U.S. 319, 322 n. 2 (1972).  It is well-settled that "[o]nly beliefs which are both sincerely held and religious in nature are protected under the

---

[4]  Although Plaintiff does not specifically raise a claim under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), the court must liberally construe the plaintiff's self-represented pleading and apply the applicable law, regardless of whether he has mentioned it by name.  *See Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).  Accordingly, the court will address Friend's free exercise claim under both § 1983 and RLUIPA.

First Amendment." *Sutton v. Rasheed*, 323 F.3d 236, 250–51 (3d Cir. 2003) (citations and internal quotation marks omitted).

"There can be no doubt that the First Amendment protects the right to pray. Prayer unquestionably constitutes the 'exercise' of religion." *Sause v. Bauer*, 138 S.Ct. 2561, 2562 (2018).[5]  Even so, the Supreme Court has held that this right is not unfettered in society or prison.  In *Sause,* the Supreme Court held that a police officer "may lawfully prevent a person from praying at a particular time and place."  *Sause*, 138 S.Ct. at 2562–63 ("[I]f an officer places a suspect under arrest and orders the suspect to enter a police vehicle for transportation to jail, the suspect does not have a right to delay that trip by insisting on first engaging in conduct that, at another time, would be protected by the First Amendment.")  Similarly, although prisoners do not forfeit their First Amendment right to practice religion due to their imprisonment, "the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates." *DeHart v. Horn*, 227 F.3d 47, 50–51 (3d Cir. 2000).  An inmate's free exercise

---

[5] In *Sause*, the Supreme Court explained that the Free Exercise Clause may have been violated by a police officer's order to the plaintiff, while he was inside her apartment investigating a noise complaint, to stop praying.  *Id.* at 2562–63.  The Supreme Court held that it was "impossible to analyze [the plaintiff's] free exercise claim" without knowing whether officers were lawfully inside her apartment and "what, if anything, the officers wanted her to do at the time when she was allegedly told to stop praying."  *Id.* at 2563.  Thus, the Court reversed and remanded for further proceedings.

rights may also be limited "in order to accommodate the demands of prison administration and to serve valid penological objectives." *Fraise v. Terhune*, 283 F.3d 506, 515 n. 5 (3d Cir. 2002). In sum, prison regulations which impinge on an inmate's ability to practice his faith are constitutionally valid so long as the prison regulation or restriction is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

To establish a violation of the Free Exercise Clause of the First Amendment, a prisoner must plead facts that plausibly show or allow the inference that the defendants' action, or a prison policy, has placed a restriction on his religious practice that is not reasonably related to a legitimate, penological interest. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349-350 (1987); *Turner*, 482 U.S. at 89. Defendants must then identify a legitimate penological interest. If a legitimate penological interest exists, the court must then consider four factors to determine the reasonableness of Defendants' actions or challenged prison regulation: (1) whether there is "a valid, rational connection" between the prison regulation and the governmental interest; (2) whether the inmate has an "alternative means of exercising the right" at issue; (3) the burden or impact the accommodation would impose on prison resources, correctional staff and inmates; and (4) "the absence of ready alternatives." *Turner*, 482 U.S. at 89-91. The most important prong of the *Turner* analysis requires a rational connection between the policy and the

legitimate governmental interest that justifies it. *Nasir v. Morgan*, 350 F.3d 366, 372 (3d Cir. 2003). With that said, courts should accord prison officials broad deference in the adoption of policies and practices that are needed to preserve internal order and discipline in the prison. *See Bell,* 441 U.S. at 547–48 (1979); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974).

The court construes Friend as setting forth two free exercise of religion claims. First, Friend alleges that CO Worthington "interrupted and stopped" his recitation of the Adhan at 4:30 a.m., during the prison's quiet hours on May 17, 2018, because he was making excessive noise and disrupting prison routine. (Doc. 35, ¶ 2.) Friend fails to demonstrate that CO Worthington's actions prevented him from practicing his religion by prohibiting him from reciting the Adhan at 4:30 a.m. According to Friend, CO Worthington's actions were based on the decibel level of Friend's prayer, not what he was reciting. Friend was disciplined for violating prison quiet time policy, disrupting prison routine, and disobeying CO Worthington's order to stop his violating action when ordered to do so. Friend fails to state a First Amendment free exercise claim against CO Worthington as he fails to demonstrate that Defendant substantially burdened his right to free exercise of religion by requiring him to conform with the prison's quiet time policy.

Friend's second free exercise claim is against Barnes, Entz, and Heap. Friend avers the Defendants told him at his disciplinary hearing that "he could not

recite the Adhan or recite during his Salaah." (*Id.*, ¶ 10.)  Taken as true, this allegation states a First Amendment claim against the disciplinary committee members as it places a substantial burden on his free exercise rights as it "forces [him] to silently say to himself the Adhan and Salaah" for "no legitimate penological interest." (*Id., ¶* 10.)

The court next examines each of Friend's free exercise claims considering the four factors announced in *Turner.*  When examining the first *Turner* factor, Defendants argue the prison has a legitimate penological interest in having set times for inmates to sleep (routine) and that there is a rational connection between this interest and the institution's quiet hours policy as well as the requirement that inmates obey staff orders to cease disruptive behavior during quiet hours.  (Doc. 37, p. 16.)  Notably, Friend acknowledges the prison's quiet time hours policy and the ease in which sound travels throughout the prison's small cellblocks.  (Doc. 35, p. 3.)  Based on these facts, the court finds there is a valid and rational connection between the institution's quiet time policy and a legitimate penological interest of ensuring the orderly operation and routine of the prison, i.e. a set time for inmates to sleep.  Likewise, there is a rational connection between the enforcement of prison rules, including quiet hours, and CO Worthington's action of interrupting Friend's recitation of Adhan during quiet time hours.

As to the second *Turner* factor, Friend claims that the institution's quiet time policy places a blanket prohibition on his sincere religious beliefs without any justifiable penological interest.  (Doc. 38, p. 4.)  However, this assertion alone is a conclusory allegation and not a factual assertion entitled to the assumption of truth. Other than stating the Adhan must be said "aloud," Doc. 35, p. 1, Friend does not claim the Adhan, or Salaah, must be recited at a certain decibel level.  Also, Plaintiff has not argued an inability to reduce the tone of his voice to comply with "quiet time" rules and still exercise his religion.  Thus, this factor weighs in favor of CO Worthington's enforcement of the quiet time rules as reasonable.  However, the same cannot be said as to the disciplinary committee members' alleged actions; prohibiting Friend from audibly reciting the Adhan or Salaah.  Friend claims he must recite the Adhan aloud.  As Barnes, Entz, and Heap's more restrictive enforcement of quiet hours requiring Friend to *silently* recite the Adhan and Salaah leaves no alternative means for Plaintiff to exercise his religion, this factor weighs in favor of Plaintiff.

As to the third *Turner* factor, based on the allegations of the third amended complaint and CO Worthington's disciplinary report, it can be inferred that allowing Friend to self-regulate the volume of his delivery of the Adhan, without limitation, would impact the inmate population and, in turn, the orderly running of the prison.  Some inmates do not object to Friend's early morning activities; others

have complained of his quiet hours violations.  (Docs. 35, 37-1.)  As Friend

comments in the third amended complaint, sound carries easily through the 10-cell

housing units of the prison.  Without the establishment of quiet hours, there would

be no set hours for rest within the housing unit.  Without the ability of staff to halt

unacceptable levels of noise during quiet hours, one or two individuals would have

the ability to decide when the day will begin on the block for all inmates.  This

factor weighs in favor of the prison's quiet hours policy, and the reasonable

enforcement of the policy.

The final *Turner* factor weighs in favor of CO Worthington as Friend fails to

demonstrate the absence of ready alternatives to his recitation of the Adhan during

quiet hours at an unacceptable level.  However, this factor weighs heavily in

Friend's favor with respect to his claims that Barnes, Entz, and Heaps told him he

could only recite the Adhan and Salaah silently.

The court finds, based on the facts in Friend's third amended complaint and

the misconduct report, that the prison's quiet time policy and its enforcement is

rationally related to the legitimate governmental interest of the orderly operation of

the facility by providing the inmates specified times for sleep.  With respect to the

actions of CO Worthington, the *Turner* factors weigh in his favor, and Defendants'

motion will be granted as to Friend's free exercise claim against this Defendant for

ordering him to stop making excessive noise at 4:30 a.m. when reciting the Adhan

after previously being warned that the level of his recitation was disturbing to others and violated the institution's quiet time rules.  The balance of the *Turner* factors do not weigh in favor of the remaining Defendants, and their motion to dismiss the First Amendment claims against them will be denied due to their alleged blanket prohibition from Friend praying at any audible level during quiet hours.[6]  Plaintiff has adequately alleged that these Defendants denied him the opportunity to practice his faith during quiet hours as he cannot audibly recite the Adhan or Salaah even under his breath given their order that he pray "silently to himself."  (Doc. 35, ¶ 10.)

### 2.  Claims Under RLUIPA

RLUIPA prohibits the government from imposing a "substantial burden" on a prisoner's religious exercise unless that burden furthers a compelling interest and is the least restrictive means of furthering that interest.  *See* 42 U.S.C. § 2000cc-1(a)(1)–(2).  RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); *see also Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005).

---

[6] To the extent Defendants allege Friend failed to allege a First Amendment claim against Barnes, Entz, and Heap, Doc. 37, pp. 16–17, their motion will be denied.  Friend clearly asserts that during the adjudication of his disciplinary incident report these Defendants "told him he could not recite the Adhan" or other prayers.  (Doc. 35, p. 2.)  As such, Friend has sufficiently alleged Barnes, Entz, and Heap's personal involvement in the violation of his free exercise right.

To establish a *prima facie* case for a RLUIPA violation, a prisoner-plaintiff must demonstrate that a substantial burden has been placed on his or her exercise of religious beliefs.  *See Robinson v. Sup't. Houtzdale SCI*, 693 F. App'x 111, 115 (3d Cir. 2017) (per curiam) ("The threshold question in any … RLUIPA case is whether the prison's challenged policy or practice has substantially burdened the practice of the inmate-plaintiff's religion.") (citing *Washington v. Klem*, 497 F.3d 272, 277–78 (2007)).  "[A] substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs."  *Washington,* 497 F.3d at 280.

The court pursuant to its authority under 28 U.S.C. §1915 will address Friend's RLUIPA claim.  For the reasons noted above, Friend fails to demonstrate that CO Worthington's enforcement of the quiet time policy at 4:30 a.m. had substantially burdened the practice of his religion.  Neither the policy nor CO Worthington's actions prevented Friend from reciting the Adhan audibly to himself in a manner consistent with quiet hours.  For these reasons, the allegations of the third amended complaint fail to establish that CO Worthington's actions or the quiet time policy itself substantially burdened his religion.  Likewise, Friend does

not allege he was deprived of a benefit as a consequence of his religious beliefs by the quiet time policy or CO Worthington's enforcement of that policy.  Therefore, Friend's RLUIPA claim against CO Worthington related to his enforcement of the quiet time policy will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.

However, as previously discussed, Barnes, Entz, and Heap's alleged order prohibiting Friend from audibly reciting Adhan or Salaah at any discernable level clearly imposes a substantial burden on Friend's religious exercise requiring him to voice his prayers aloud.  Accordingly, Friend's RLUIPA claim shall proceed exclusively against Barnes, Entz, and Heap.

## B. Friend's Procedural Due Process Claim Concerning his Disciplinary Hearing

A pretrial detainee is protected by the Due Process Clause of the Fourteenth Amendment.  *Hubbard v. Taylor*, 399 F.3d 150, 157-80 (3d Cir. 2005).  "While pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in [segregated detention] without an explanation or review of their confinement."  *Williams v. Delaware Cnty. Bd. of Prison inspectors*, 844 F. App'x 469, 472–73 (3d Cir. 2021) (internal quotations and brackets omitted); *see also Singleton v. Sup't camp Hill SCI*, 747 F. App'x 89, 92 (3d Cir. 2018) (same).  When pretrial detainees are placed in disciplinary housing for violating prison rules, they must be

17

provided "the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 … (1974)." *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018). These protections include "the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.*, 739 F. App'x at 116. However, "a detainee's right to call witnesses and present documentary evidence is cabined by the prison's discretion to 'keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority,' as well as to refuse to allow specific documentary evidence." *Id.*, 739 F. App'x at 116 (quoting *Wolff*, 418 U.S. at 565–56).

Friend, a pretrial detainee, alleges that "Defendants Barnes, Entz, [and] Heap violated [his] 14th Amendment Due Process right to call the witnesses to the disciplinary hearing … that would have established testimony in favor of Plaintiff's assertions that he was neither excessive in noise [n]or disruptive [to the] prison routine." (Doc. 35, ¶ 11.) His due process claim rests on his assertion that his intended witnesses would have supported his statements that he was not excessively noisy nor disruptive to the prison's routine that May morning. (*Id.*) Friend attaches at least one declaration to his third amended complaint that supports this assertion. Declarant Alec Barnes states that he was housed on the

18

same cell block as Friend, and witnessed CO Worthington "try to interrupt inmate Friend[']s call to Adan." Barnes states that "the call to Adan did not bother nor disturb [him]."  (Doc. 35, p. 5.)  This information corroborates Friend's own statement made at his disciplinary hearing.[7]

As noted above, and advanced by Defendants, a prisoner's right to call witnesses in his defense is limited only by demands of prisoner safety and institutional order, as determined by the sound discretion of prison officials.  (Doc. 37, p. 18.)  Prison officials are accorded this broad discretion since "[t]he operation of a correctional institution is at best an extraordinary difficult undertaking." *Wolff*, 418 U.S. at 566.  However, it is not absolute.  *Young v. Kann,* 926 F.2d 1396, 1400 (3d Cir. 1991).  Because "the touchstone of due process is protection of the individual against arbitrary action of government," at least a limited judicial review of the broad discretion exercised by prison officials is necessary in this matter. *Wolff*, 418 U.S. at 558.  At this early juncture in these proceedings, the court can not conclude that there was a security reason for denying Friend the opportunity to call a single witness at his disciplinary hearing.  Accordingly, Defendants' motion to dismiss Friend's due process claim will be denied.[8]

---

[7] "INMATE STATEMENT:  I wasn't yelling.  I do this every morning.  I got permission from Sgt. White.  No other guards give me a problem, only Worthington."  (Doc. 37-1.)

[8] To the extent Defendants seek dismissal of Plaintiff's claim for punitive damages, the court declines to grant this request as it would be premature to delve into the factual determination required for such an award at the motion to dismiss stage.  *See Harvell v. Brumberger*, Civ. No.

CONCLUSION

The court will grant in part and deny in part the Defendants' motion to dismiss Friend's third amended complaint.  (Doc. 35.)  The court will enter an appropriate order.

s/ Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated:  September 24, 2021

---

3:19-CV-2124, 2020 WL 6947693, at * 8 (M.D. Pa. Nov. 4, 2020), *report and recommendation adopted by,* 2020 WL 6946575 (M.D. Pa. Nov. 25, 2020) (noting that the issue of punitive damages "often turns on the defendants' state of mind" and "this question frequently cannot be resolved on the pleadings alone but must await the development of a full factual record at trial.")